IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHAWNIA C. ALSTON,

       Plaintiff,

vs.                         Case No. 10-1176-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

       Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff
supplemental security income payments.  The matter has been fully
briefed by the parties.

## I.  General legal standards

The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the
national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential
evaluation process to determine disability.  If at any step a
finding of disability or non-disability can be made, the
Commissioner will not review the claim further.  At step one, the
agency will find non-disability unless the claimant can show that
he or she is not working at a "substantial gainful activity."  At
step two, the agency will find non-disability unless the claimant
shows that he or she has a "severe impairment," which is defined
as any "impairment or combination of impairments which
significantly limits [the claimant's] physical or mental ability
to do basic work activities."  At step three, the agency
determines whether the impairment which enabled the claimant to
survive step two is on the list of impairments presumed severe
enough to render one disabled.  If the claimant's impairment does
not meet or equal a listed impairment, the inquiry proceeds to
step four, at which the agency assesses whether the claimant can
do his or her previous work; unless the claimant shows that he or
she cannot perform their previous work, they are determined not
to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On September 28, 2009, administrative law judge (ALJ) Melvin B. Werner issued his decision (R. at 8-16). Plaintiff alleges that she has been disabled since September 1, 2000 (R. at 8). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the application date of November 1, 2007 (R. at 10). At step two, the ALJ found that plaintiff had the following severe impairments: depressive disorder, continue to rule out personality disorder not otherwise

4

specified, and borderline intellectual functioning (R. at 10).

At step three, the ALJ determined that plaintiff's impairments do

not meet or equal a listed impairment (R. at 11-12).  After

determining plaintiff's RFC (R. at 12), the ALJ found at step

four that plaintiff is able to perform past relevant work (R. at

14-15).[1]  In the alternative, at step five, the ALJ found that

plaintiff could perform other jobs that exist in significant

numbers in the national economy (R. at 15-16).  Therefore, the

ALJ concluded that plaintiff was not disabled (R. at 16).

**III.  Did the ALJ err in his consideration of the opinions of Dr.**

**Parker, Dr. Hawthorne, and Dr. Allen?**

The opinions of physicians, psychologists, or psychiatrists

who have seen a claimant over a period of time for purposes of

treatment are given more weight than the views of consulting

physicians or those who only review the medical records and never

examine the claimant.  The opinion of an examining physician is

generally entitled to less weight than that of a treating

---

[1]The ALJ decision initially stated that plaintiff is capable
of performing past relevant work (R. at 14).  The ALJ then stated
that the vocational expert (VE) testified that plaintiff could
perform past work (R. at 15).  The ALJ then stated that plaintiff
was "unable" to perform past relevant work (R. at 15).  In light
of the testimony of the VE that plaintiff could perform past
work, it appears that the use of "unable" was a typographical
error and that the ALJ meant to state that plaintiff was "able"
to perform past relevant work.  However, defendant, in his brief,
stated that plaintiff's past work was not at a level indicating
substantial gainful activity.  On the other hand, the defendant
noted that the ALJ found that plaintiff could perform other work
in the national economy (Doc. 24 at 2 n.2).

physician, and the opinion of an agency physician who has never
seen the claimant is entitled to the least weight of all.
Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  When
a treating source opinion is inconsistent with the other medical
evidence, the ALJ's task is to examine the other medical source's
reports to see if they outweigh the treating source's reports,
not the other way around.  Treating source opinions are given
particular weight because of their unique perspective to the
medical evidence that cannot be obtained from the objective
medical findings alone or from reports of individual
examinations, such as consultive examinations.  If an ALJ intends
to rely on a nontreating physician or examiner's opinion, he must
explain the weight he is giving to it.  Hamlin v. Barnhart, 365
F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally
sufficient explanation for rejecting the opinion of treating
medical sources in favor of non-examining or consulting medical
sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity
of the claimant's impairments should be given controlling weight
by the Commissioner if well supported by clinical and laboratory
diagnostic techniques and if it is not inconsistent with other
substantial evidence in the record.  Castellano v. Secretary of
Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20
C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating

6

physician opinion is not given controlling weight, the ALJ must

nonetheless specify what lesser weight he assigned the treating

physician opinion.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083

(10th Cir. 2004).  A treating source opinion not entitled to

controlling weight is still entitled to deference and must be

weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of
examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

<u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

   After considering the above factors, the ALJ must give good

reasons in his/her decision for the weight he/she ultimately

assigns the opinion.  If the ALJ rejects the opinion completely,

he/she must then give specific, legitimate reasons for doing so.

<u>Watkins</u>, 350 F.3d at 1301.

   The ALJ provided the following evaluations of the medical

opinions:

> Pursuant to SSR 96-6p, the Administrative Law
> Judge has considered the opinions rendered by
> the State agency medical consultants. The
> record supports, for the most part, the
> residual functional capacity opinions
> rendered by those consultants (Exhibit 7F &
> 20F).

T.A. Moeller, Ph.D., after reviewing the evidence of record and examining the claimant including the administration of multiple clinical tests offered the most recent opinion of the claimant's mental function that is also generally consistent with the residual functional capacity in this decision (Exhibit 24F).

R. Lance Parker, Ph.D., offered an opinion of the claimant's mental residual functional capacity that if sustained for 12 months would be disabling (Exhibit 10F). However, the opinion was offered at a time of extreme exacerbation just before hospitalization (2006) one year prior to the claimant's application for disability. Dr. Parker's opinion is considered and given some weight. However, it is not persuasive regarding the claimant's current residual functional capacity sustained over any 12 month period during the adjudicative period.

Janet Hawthorne, Ph.D., filled out a mental residual functional capacity form showing several extreme and several marked limitations. Dr. Hawthorne commented that the claimant had a substance abuse diagnoses at the time, although she was of the opinion that if the claimant stopped, she would have the limitations checked. The claimant testified that she used drugs about the middle of 2007 which coincides with the date Dr. Hawthorne signed the residual functional capacity form. There are no treatment notes from Dr. Hawthorne. Thus, Dr. Hawthorne's opinion is given some weight. However, it is not consistent with the longitudinal record. To the degree Dr. Hawthorne is of the opinion the claimant is disabled, her opinion is not persuasive and is accorded less than controlling weight (CFR 20 416.927 & SSR 96-2p). The decision regarding disability is reserved to the Commissioner based on all the evidence (SSR 96-5P).

Molly Allen, Psy.D. reviewed the medical record at the time and examined the claimant,

8

> but did not perform any clinical testing
> (Exhibit 5F). Dr. Allen performed another
> consult approximately a year and a half later
> (Exhibit 17F). She offered an opinion
> regarding the claimant's function after each
> exam that was somewhat equivocal, but was
> generally consistent with the residual
> functional capacity in this decision. In the
> second opinion she stressed the claimant's
> lack of motivation. To the degree it can be
> interpreted that the claimant's residual
> functional capacity opined by Dr. Allen is
> more restrictive than found in this decision,
> the Administrative Law Judge has relied more
> heavily on the opinion of Dr. Moeller, who
> more recently examined the claimant and
> administered a variety of clinical tests. His
> results are considered to be more objective,
> considering the record as a whole, and do not
> include a notation that motivation is
> assessed.

(R. at 14).  Plaintiff argues that the ALJ erred in his analysis

of the opinions of Drs. Parker, Hawthorne, and Allen.

Dr. Parker was plaintiff's treating therapist (R. at 380).

He opined on November 27, 2006 that plaintiff had marked

limitations in 7 out of 20 mental RFC categories, and extreme

limitations in 12 out of 20 categories (R. at 469-471).  The ALJ

stated that he discounted the opinion of Dr. Parker because "the

opinion was offered at a time of extreme exacerbation just before

hospitalization (2006) one year prior to the claimant's

application for disability" (R. at 14).  However, plaintiff was

hospitalized from June 16-24, 2006 (R. at 380).  Thus, Dr. Parker

did not offer his opinion at a time of extreme exacerbation just

before hospitalization, but in fact offered his opinion five

months after plaintiff was hospitalized.  Furthermore, Dr. Parker
opined that plaintiff had had these limitations since October
2005 (R. at 470), long before she was hospitalized.  The ALJ
clearly erred in this justification for discounting the opinion
of Dr. Parker.

The ALJ also gave weight to the fact that the opinion of Dr.
Parker was offered one year prior to plaintiff's application for
SSI disability benefits (R. at 14).  Plaintiff did apply for SSI
benefits on November 1, 2007.  The earliest month that SSI
benefits can be paid, assuming that the person is entitled to SSI
benefits, is the month following the month the claimant filed the
application.  20 C.F.R. § 416.335 (2011 at 883).  However,
plaintiff alleged in her application that she has been disabled
since September 1, 2000 (R. at 8).  Thus, the opinions of Dr.
Parker are clearly relevant to plaintiff's claim that she has
been disabled since September 1, 2000, even though she could
collect SSI benefits no earlier than December 2007.

Dr. Hawthorne was also plaintiff's therapist (R. at 481).
She opined on October 24, 2007 that plaintiff had marked mental
limitations in 9 out of 20 categories, and extreme limitations in
5 out of 20 categories (R. at 480-482).  The ALJ also discounted
the opinions of Dr. Hawthorne for a number of reasons.  The ALJ
noted that plaintiff testified that she used drugs about the
middle of 2007, which coincided with the date Dr. Hawthorne

10

signed the RFC form.  Plaintiff testified on December 19, 2008
that she thought the last time she used marijuana was the middle
of last year (2007) (R. at 43).  Dr. Hawthorne, on October 24,
2007, stated that plaintiff had not used marijuana for 5 months
(R. at 482).  The evidence from Dr. Hawthorne and plaintiff
clearly demonstrate that plaintiff stopped using drugs months
before Dr. Hawthorne offered his opinion on October 24, 2007; the
ALJ pointed to no contrary evidence on this issue.  Therefore,
the ALJ erred when he stated that plaintiff was using drugs when
Dr. Hawthorne provided his opinion.[2]

The ALJ also discounted the opinion of Dr. Hawthorne because
there were no treatment notes from her (R. at 14).  Dr.
Hawthorne's own RFC evaluation references plaintiff's therapy
sessions with Dr. Hawthorne (R. at 481).  The record does not
indicate that any effort was made to obtain the treatment records

---

[2]Plaintiff also alleges error by the ALJ because he did not
apply the regulatory criteria for drug/alcohol abuse.  An ALJ
must first conduct the five-step inquiry without separating out
the impact of alcoholism or drug addiction.  If the ALJ finds
that the claimant is not disabled under the five-step inquiry,
then the claimant is not entitled to benefits and there is no
need to proceed with the analysis under 20 C.F.R.   §§ 404.1535
or 416.935.  Only if the ALJ finds that the claimant is disabled
and there is medical evidence of his or her drug addiction or
alcoholism should the ALJ proceed under §§ 404.1535 or 416.935 to
determine if the claimant would still be found disabled if he or
she stopped using alcohol or drugs.  <u>Bustamante v. Massanari</u>, 262
F.3d 949, 955 (9th Cir. 2001).  In this case, because the ALJ
found that plaintiff was not disabled, there was no need to
determine if plaintiff would still be found disabled if he
stopped using alcohol or drugs.

from Dr. Hawthorne.

42 U.S.C. § 423(d)(5)(B) states as follows:

> In making any determination with respect to
> whether an individual is under a disability
> or continues to be under a disability, the
> Commissioner of Social Security shall
> consider all evidence available in such
> individual's case record, **and shall develop a
> complete medical history of at least the
> preceding twelve months for any case in which
> a determination is made that the individual
> is not under a disability. In making any
> determination the Commissioner of Social
> Security shall make every reasonable effort
> to obtain from the individual's treating
> physician (or other treating health care
> provider) all medical evidence, including
> diagnostic tests, necessary in order to
> properly make such determination**, prior to
> evaluating medical evidence obtained from any
> other source on a consultative basis.

(emphasis added).  Although the claimant has the burden of

providing medical evidence proving disability, the ALJ has a

basic duty of inquiry to fully and fairly develop the record as

to material issues.  This duty is especially strong in the case

of an unrepresented claimant.  The ALJ has a duty to develop the

record by obtaining pertinent, available medical records which

come to his attention during the course of the hearing.  Carter

v. Chater, 73 F.3d 1019, 1021, 1022 (10th Cir. 1996).

In the case of Madrid v. Barnhart, 447 F.3d 788, 790 (10th

Cir. 2006), the court set forth the applicable law regarding the

ALJ's duty to develop the record regarding medical evidence:

"It is beyond dispute that the burden to

12

prove disability in a social security case is
on the claimant." <u>Hawkins v. Chater</u>, 113 F.3d
1162, 1164 (10th Cir.1997); 20 C.F.R. §
404.1512(a) ( "[Y]ou must bring to our
attention everything that shows that you are
⋯ disabled."). Nevertheless, because a
social security disability hearing is a
nonadversarial proceeding, the ALJ is
"responsible in every case 'to ensure that an
adequate record is developed during the
disability hearing consistent with the issues
raised.' " <u>Hawkins</u>, 113 F.3d at 1164 (quoting
<u>Henrie v. United States Dep't of Health &
Human Servs.</u>, 13 F.3d 359, 360-61 (10th
Cir.1993)); 20 C.F.R. § 404.944 (requiring
the ALJ to "look[ ] fully into the issues").
Generally, this means that the "ALJ has the
duty to...obtain[ ] pertinent, available
medical records which come to his attention
during the course of the hearing." <u>Carter v.
Chater</u>, 73 F.3d 1019, 1022 (10th Cir.1996).
Moreover, the ALJ's "duty is heightened" when
a claimant, like Mr. Madrid, appears before
the ALJ without counsel. <u>Henrie</u>, 13 F.3d at
361; <u>Musgrave v. Sullivan</u>, 966 F.2d 1371,
1374 (10th Cir.1992) (same); <u>see</u> <u>also</u> <u>Dixon
v. Heckler</u>, 811 F.2d 506, 510 (10th Cir.1987)
("The [ALJ's] duty of inquiry takes on
special urgency when the claimant has little
education and is unrepresented by counsel.").

In <u>Madrid</u>, the ALJ acknowledged that Mr. Madrid was referred for

a rheumatology work-up and that a rheumatoid factor test was

performed, but the ALJ apparently dismissed the possibility of a

rheumatological disorder because the record contained no evidence

of a rheumatology work-up.  The court held that the ALJ committed

legal error by not requesting the rheumatoid factor test results.

The court found that this failure was especially troubling

because Mr. Madrid was not represented by counsel at the

administrative hearing, the test results were in existence at the

time of the hearing and apparently available, and the ALJ was aware the test was performed.   447 F.3d at 791.

In the recent case of Stidham v. Astrue, Case No. 09-2362-JWL, 2010 WL 3862030 (D. Kan. Sept. 27, 2010), the ALJ discounted the opinions of claimant's therapist because the diagnoses were not accompanied by contemporaneous treatment notes.   Citing to the cases set forth above, the court held that the facts of the case demonstrated that there were pertinent, available records which came to the ALJ's attention, but he failed to obtain them, and thereby erred.   2010 WL 3862030 at *3-4.   In the case of Maes v. Astrue, 522 F.3d 1093 (10th Cir. 2008), the claimant was represented by counsel.   Nonetheless, the court held that the ALJ had a duty to recontact medical sources to supplement or clarify the evidence concerning claimant's alleged mental impairment when the ALJ relied on a lack of evidence regarding diagnosis and treatment when determining that plaintiff was not disabled.   522 F.3d at 1097-1098.

In the case before the court, plaintiff was represented by legal counsel at the hearing (R. at 23, 25).   However, as in Stidham and Maes, the ALJ, in his decision, expressly relied on the absence of treatment records as a basis for discounting the opinions of claimant's therapist and finding that plaintiff was not disabled.   The ALJ has a duty to develop the record by obtaining pertinent, available medical records which come to his

14

attention.  This duty is especially apparent when the ALJ

believes that the absence of treatment records may impact the

weight he accords to the opinions of the treatment provider.  The

court finds that the ALJ erred by relying on the absence of

treatment notes to discount a treatment provider's opinion

without making any effort to obtain those treatment notes.[3]

The record also contains two consultative examinations by

Dr. Allen, a psychologist.  The first examination was prepared on

September 6, 2006 (R. at 431-433), and the second examination was

prepared on February 13, 2008 (R. at 498-501).  In her second

report, Dr. Allen concluded as follows:

> ABILITY TO SUSTAIN WORK-RELATED SKILLS: It is
> rather difficult to imagine Ms.
> Alston having success in a work environment.
> She can understand and carry out simple
> instructions. However, she tends to be so
> excessively preoccupied and frightened that
> it would be hard for her to focus for long.
> She has a lot of difficulty working alongside
> and for other people. She would have a
> difficult time adapting independently to a
> work environment because of her tendency to
> be so apprehensive. She is not at all a
> persistent individual. It is difficult for
> her to even manage the basics such as getting
> up and taking care of her kids right now, and
> she has been able to manage finances in the
> past, but only barely, probably moving so
> frequently to get away from bills.

(R. at 500).

--------

[3]Dr. Hawthorne's opinion included his address (R. at 482).
Therefore, the ALJ could have easily requested the treatment
notes.

The ALJ found that plaintiff could perform a full range of work at all exertional levels, but is limited to occupations of an essentially routine nature that do not require frequent interactive co-worker or public contact (R. at 12).   The ALJ claimed that the opinion of Dr. Allen was "generally consistent" with the ALJ's RFC findings (R. at 14).   However, the court finds that a comparison of the ALJ's RFC findings and the conclusions in Dr. Allen's 2nd report are not generally consistent.

The ALJ, in the alternative, states that to the degree that it can be interpreted that plaintiff's RFC is not consistent with the opinions of Dr. Allen, the ALJ indicated that he relied more heavily on Dr. Moeller's report, stating that Dr. Moeller had more recently examined the plaintiff and had administered a variety of clinical tests.   Certainly, the use of clinical tests by Dr. Moeller can serve as a valid basis for giving greater weight to the opinions of Dr. Moeller.

The ALJ also noted that Dr. Allen "stressed" plaintiff's "lack of motivation" in her 2nd report (R. at 14).   However, the word "motivation" does not appear in either of Dr. Allen's reports.   Therefore, the ALJ erred by relying on plaintiff's lack of motivation as a basis for discounting Dr. Allen's report.[4]

---

[4]The ALJ also found that Dr. Moeller's report did not include a notation that motivation was assessed (R. at 14). However, Dr. Moeller's report included a diagnosis of "questionable motivation" (R. at 538).

16

In light of the numerous errors by the ALJ in his analysis
of the opinions of Dr. Parker, Dr. Hawthorne, and Dr. Allen, this
case shall be remanded for further hearing.  On remand, the ALJ
must not consider the opinions of these treating and examining
sources in isolation, but those opinions must be considered in
light of the entire evidentiary record, including the opinions
and assessments of other treating and examining sources.  The
court is concerned with the necessarily incremental effect of
each individual report or opinion by a source on the aggregate
assessment of the evidentiary record, and, in particular, on the
evaluation of reports and opinions of other treating and
examining sources, and the need for the ALJ to take this into
consideration.  See Lackey v. Barnhart, 127 Fed. Appx. 455, 458-
459 (10th Cir. April 5, 2005).

**IV.  Did the ALJ err in finding that plaintiff's impairments did
not meet or equal 12.05C?**

Plaintiff argues that the ALJ erred by failing to discuss
whether plaintiff's impairments equaled listed impairment 12.05C.
Listed impairment 12.05C is as follows:

> 12.05 *Mental retardation:* Mental retardation
> refers to significantly subaverage general
> intellectual functioning with deficits in
> adaptive functioning initially manifested
> during the developmental period; *i.e.,* the
> evidence demonstrates or supports onset of
> the impairment before age 22.
>
> The required level of severity for this

17

> disorder is met when the requirements in A,
> B, C, or D are satisfied....
>       *      *      *
> C.  A valid verbal, performance, or full
> scale IQ of 60 through 70 and a physical or
> other mental impairment imposing an
> additional and significant work-related
> limitation of function.

20 C.F.R., Pt. 404, Subpt. P., App. 1 at 479 (2011 at 511).

IQ testing by Dr. Moeller in March 2009 indicated that plaintiff had a verbal IQ of 71, a performance IQ of 79 and a full scale IQ of 73, which, according to Dr. Moeller, placed her in the borderline range of intellectual abilities (R. at 536).[5] The ALJ found that plaintiff's impairments did not meet or equal 12.05C (R. at 11).  The ALJ explained why he found that plaintiff's impairments did not meet listed impairment 12.05C (i.e., her IQ scores were above 70 and there was no diagnosis of mental retardation), but the ALJ did not explain why he found that her impairments did not equal 12.05C (R. at 12).

Plaintiff claims that the ALJ should have considered POMS § DI 24515.056(D)(1)(c), which states as follows concerning listed impairment 12.05C:

> However, slightly higher IQ's (e.g., 70-75)
> in the presence of other physical or mental
> disorders that impose additional and
> significant work-related limitation of
> function may support an equivalence
> determination.  It should be noted that

---

[5]The record also contains IQ testing from 2003, which found that plaintiff had a verbal cognitive IQ of 81, a visual motor IQ of 92 and a full scale IQ of 85 (R. at 325).

> generally the higher the IQ, the less likely
> medical equivalence in combination with
> another physical or mental impairment(s) can
> be found.

(http://policy.ssa.gov/poms.nsf/lnx/0424515056!opendocument,

August 12, 2011).

The Program Operations Manual System (POMS) is a policy and

procedural manual that employees of the Social Security

Administration use in evaluating social security claims.

Although the POMS does not have the force and effect of law, it

is nevertheless a persuasive interpretation by the Commissioner

of binding statutory and regulatory law.  Davis v. Secretary of

Health & Human Services, 867 F.2d 336, 340 (6th Cir. 1989);

Stillwell v. Sullivan, 1992 WL 401971 at *6 (D. Kan. Dec. 30,

1992)(Belot, D.J.).  The court's review of an agency's

interpretation of a statute or regulation it administers is

highly deferential.  The agency's interpretation, as set out in a

POMS, is given controlling weight unless it is arbitrary,

capricious, or contrary to law.  In other words, the agency's

interpretation must be given controlling weight unless it is

plainly erroneous or inconsistent with the regulations.  McNamar

v. Apfel, 172 F.3d 764, 766, 767 (10th Cir. 1999).

In the case of Shontos v. Barnhart, 328 F.3d 418, 424-425

(8th Cir. 2003), the claimant had an IQ of 72.  Despite the fact

that the court had previously stated that an ALJ should consider

the POMS guidelines, the court found no evidence that the ALJ

19

considered the POMS guidelines.  There is no evidence in the case before the court that the ALJ considered the POMS guideline set forth above.

However, it is plaintiff's burden at step three to present evidence establishing his/her impairments meet or equal a listed impairment.  <u>Fischer-Ross v. Barnhart</u>, 431 F.3d 729, 733 (10th Cir. 2005).  Medical equivalence is defined in 20 C.F.R. § 404.1526(a,b)(2011 at 377-378).  Furthermore, 12.05C includes a capsule definition that mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.  In the recent case of <u>Crane v. Astrue</u>, 369 Fed. Appx. 915, 921 (10th Cir. Mar. 17, 2010), the court, citing to DI 24515.056(B)(1), held that the above POMS is used only when the capsule definition of the listed impairment is satisfied.  In the absence of any evidence that a claimant met the capsule definition, there is no need to consider this POMS.  Therefore, on remand, plaintiff must provide evidence that the capsule definition of the listed impairment is satisfied.

**V.  Did the ALJ err in his credibility and RFC findings?**

Plaintiff also alleges errors by the ALJ in his credibility and RFC findings.  The court will not reach these issues because

20

they may be affected by the ALJ's resolution of the case on
remand after giving further consideration to the medical opinion
evidence, as set forth above.   See Robinson v. Barnhart, 366 F.3d
1078, 1085 (10th Cir. 2004).

**VI.   Should this case be reversed and remanded for further
hearing, or reversed for an award of benefits?**

When a decision of the Commissioner is reversed, it is
within the court's discretion to remand either for further
administrative proceedings or for an immediate award of benefits.
When the defendant has failed to satisfy their burden of proof at
step five, and when there has been a long delay as a result of
the defendant's erroneous disposition of the proceedings, courts
can exercise their discretionary authority to remand for an
immediate award of benefits.   Ragland v. Shalala, 992 F.2d 1056,
1060 (10th Cir. 1993).   The defendant is not entitled to
adjudicate a case ad infinitum until it correctly applies the
proper legal standard and gathers evidence to support its
conclusion.   Sisco v. United States Dept. of Health & Human
Services, 10 F.3d 739, 746 (10th Cir. 1993).   A key factor in
remanding for further proceedings is whether it would serve a
useful purpose or would merely delay the receipt of benefits.
Harris v. Secretary of Health & Human Services, 821 F.2d 541, 545
(10th Cir. 1987).   Thus, relevant factors to consider are the
length of time the matter has been pending, and whether or not,

given the available evidence, remand for additional fact-finding would serve any useful purpose, or would merely delay the receipt of benefits.  Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006).  The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits.  Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).

Plaintiff requests that the decision of the Commissioner be reversed and remanded for an award of benefits.  First, this case has been pending for less than four years.  Second, although there is medical evidence from Dr. Allen (a consultant), and two treating therapists, Dr. Parker and Dr. Hawthorne, that would support a finding of disability, the record also contains an opinion from another consultant, Dr. Moeller (R. at 531-544), a psychologist, and two state agency non-examining consultants, Dr. Blum and Dr. Cohen (R. at 437-439, 519-521) that would support a finding that plaintiff can work.  Furthermore, as noted by the ALJ, Dr. Moeller is the only treating or consulting source who administered and relied on various clinical tests when rendering his opinions.  Given the clear conflict in the medical source evidence, the court finds that a remand for further fact-finding would clearly serve a useful purpose.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 19th day of August 2011, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

23